## Case No. 9,744.

### MOODIE v. The HARRIET.

[Bee, 128.] [1]

District Court, D. South Carolina. 1798.

SALVAGE—RECAPTURE—RANSOMED SHIP—PORT OF DESTINATION.

Salvage allowed upon recapture of a ransomed ship; the ransom bill declaring that the sum agreed upon therein should only be payable upon the arrival of the vessel at her port of destination, where she never arrived.

This is a suit instituted [by Benjamin Moodie] for salvage in recapturing the brig Harriet on the high seas on the 26th of October, 1798. It appears, from the pleadings and proofs before the court, that this brig belonged to Tunno and Cox, and Miller and Robertson, merchants of this city. That she sailed on the 8th day of October last from a Spanish port on the south side of the island of Cuba, bound to the Havanna. That, two days after, she was taken, in sight of the island, by a French privateer called the Betsey; another privateer being in company. That these privateers, finding the brig had no cargo on board, were preparing to set her on fire; whereupon the captain (Lightbourne) proposed to ransom her. This being agreed to, he drew an order, on a house in the Havanna, for two thousand dollars, the sum fixed; which order was payable upon the arrival of the brig at the Havanna, and was in nature of a ransom bill. Upon signature of this paper, the vessel was suffered to proceed on her voyage, Captain Lightbourne being detained on board one of the privateers as a hostage. A Frenchman, as prizemaster, and two American seamen were sent on board from the capturing vessels; but they did not interfere in the management of the vessel, leaving this wholly to the mate, who took the command, and made the usual entries in the logbook. Some days after this they fell in with an American armed brig, who, finding that the Harriet had been taken and ransomed, left her. Sixteen days after her first capture (26th of October) she was met with by a British privateer, of New-Providence, who took possession of her as a recaptured vessel, put on board a prizemaster and crew, and ordered her to the port of Nassau. They endeavoured to reach that place, but, being prevented by bad weather and contrary winds, proceeded to Charleston, and arrived here on the 19th November last.

---

[1] [Reported by Hon. Thomas Bee, District Judge.]

BEE, District Judge. The only question for the court to decide is, whether, under the circumstances of this case, the actors are entitled to any, and what, salvage. It is contended on the part of the owners, that, if the vessels had been carried into a British port, no salvage would have been allowed, because she had been previously ransomed, and the ransom bill not recovered. The argument appeared, at first, to have weight; but, upon looking into cases partly resembling this, and considering the nature of the ransom bill produced in the cause, I think the inference will not hold. The ransom bill in this case expresses that two thousand dollars shall be paid upon the arrival of the brig at the Havanna: But the recapture prevented her arrival there; of course, the obligation became void: and, though they had the captain as a hostage, yet no suit could have been maintained on that bill, in any civilized country; because the event in which alone the payment was expressed to be due, never took place. What prevented it? The recapture by the British privateer. This saved the ransom to the owners. And the French captor seems to have been of that opinion, for the hostage was discharged, and the ransom bill with him.

It was contended that, if the brig had arrived at the Havanna, she would have been restored, on the ground of having been taken within the jurisdictional limits of the island. This might have been the case; but the consideration, I believe, would not have availed, if she had been carried into a British port. They would have in that event, considered nothing more than the original capture by their enemy, and subsequent recapture by their subjects. And if this court should go into an investigation of the point relied on, it would involve the question of prize, or no prize. But it is laid down in Doug. 627, that though the contract of ransom happen to be connected, in point of time, with the capture as prize, it does not necessarily arise out of it, but is, in truth, a mere simple contract of sale between individuals, who at the time, and for the purpose, of contract are not considered as being the subjects of hostile nations: on which principle was decided the case, in 3 Burrows, of Record and Bettingham. There, though war still subsisted, and though the hostage had died in captivity, the action was maintained by an alien enemy against a subject of Great Britain; and this decree, Lord Mansfield says, was notorious over all Europe. But though this be law where the ransom bill is not recaptured, yet the case in Douglas, resting chiefly upon the authority of Valin, and other foreign writers, proves clearly that the recapture of the ransom bill puts an end to the claim of the first captor. In the case before me, the vessel, on the safe arrival of which at the Havanna, the ransom bill was due, has been recaptured. This is certainly equivalent to a recapture of the bill itself, and clearly extinguishes the claim of the original captors. So far the recaptors are entitled to salvage.

The remaining part of the question is what the amount of that salvage shall be. From several decrees of British admiralty courts during the present contest, I find that one eighth has been a usual allowance to captors. In the case of the money taken out of the Grand Sachem, the admiralty court at Antigua decreed restitution to the original owners, upon proof of property; and reserved an eighth for salvage to the recaptors. This proportion is also observed by the court of admiralty in England, as appears from Doug. 624.

Upon the strength of these authorities, which seem to me fully applicable to the case before me, I decree to the recaptors one eighth, amounting to two hundred and fifty dollars, with costs of suit.